UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

----------------------------------------------------------------X
:
ESTATE OF COBURN BENSON (DECEASED) :
AND LESTER WILLIAMS, :
:
                        Plaintiffs, :
:
V. :      Docket no.: 2:20-cv-00115-GZS
:
DRAGONE CLASSIC MOTORCARS, INC., :
EMANUEL AND GEORGE DRAGONE :
:
                        Defendants :
:
----------------------------------------------------------------X

**REPLY TO PLAINTIFF'S OBJECTION TO MOTION TO
DISMISS WITH INCORPORATED MEMORANDUM OF LAW**

      The Defendants, Dragone Classic Motorcars, Inc., Emanuel Dragone and George Dragone, respectfully submit the following reply to the Plaintiff's Objection to the Defendants' Motion to Dismiss the First Amended Complaint ("FAC"). For the following reasons and upon those raised in the Defendants' Motion to Dismiss, the Plaintiff's' objection should be overruled and the Defendants' Motion to Dismiss granted.

**Personal Jurisdiction**

      "When subject matter jurisdiction is based upon diversity of citizenship... a federal court asserts personal jurisdiction in accordance with the law of the forum (here, Maine) and the Fourteenth Amendment's due process clause. Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir.1995)." Maine Helicopters, Inc. v. Lance Aviation, Inc., 563 F. Supp. 2d 292, 294 (D. Me. 2008). The Maine Law Court holds that in the specific jurisdiction analysis, due process "is satisfied when: `(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the Defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's

courts comports with traditional notions of fair play and substantial justice.'" Connelly v. Doucette, 909 A.2d 221, 223 (Me.2006) (quoting Commerce Bank and Trust Co. v. Dworman, 861 A.2d 662, 666 (Me.2004)).

With respect to the first factor -- Maine's legitimate interest in the subject matter -- the Plaintiff states in his objection "Maine has a public policy interest in protecting its citizens from fraudulent businesses or scammers, especially its elderly citizens. Plaintiff has plead[sic] a Fraud Count as well." (Pl obj. p. 8.) However, nowhere in the FAC or in any supporting materials has the Plaintiff alleged facts or pointed to evidence demonstrating that the Defendant corporation is a "fraudulent business." Rather, the FAC alleges that Dragone Classic Motorcars, Inc. is a registered Connecticut dealer, in good standing, with corporate officers, and, at least, a showroom in Connecticut. See FAC ¶¶ 5, 8, 9, 10, 20, 60. The FAC alleges no facts demonstrating that any of the Defendants are "scammers," nor does the Plaintiff proffer any such facts by any other means. While it is true that thePPlaintiff has alleged a fraud count, as addressed in more detail in the Defendants' Motion to Dismiss, the Plaintiff has failed to adhere to the heightened fraud pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. In short, under First Circuit law, "Rule 9 imposes heightened pleading requirements for allegations of fraud in order to give notice to Defendants of the Plaintiffs' claim, to protect Defendants whose reputation may be harmed by meritless claims of fraud, to discourage "strike suits," and to prevent the filing of suits that simply hope to uncover relevant information during discovery. Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). A fraud allegation is sufficiently pled only "if it identifies the circumstances constituting fraud so that the Defendant can prepare an adequate answer from the allegations," Wyman v. Prime Discount Sec., 819 F. Supp. 79, 83 (D. Me. 1993), and if there are multiple Defendants, the complaint must be specific enough such that "each Defendant's role must be particularized with respect to their alleged involvement in the fraud." Rhone v. Energy North, Inc., 790 F. Supp. 353, 361 (D. Mass. 1991). The FAC totally fails to adhere to these heightened pleading

requirements, and the Plaintiff's arguments are merely scandalous, baseless assertions totally lacking support in the record.

With respect to the second factor -- whether the Defendants by their conduct, reasonably could have anticipated litigation in Maine -- the Plaintiff tries several arguments. First, the Plaintiff argues that it is enough that the alleged contract was between the a citizen of Maine and a Connecticut corporation, since the Defendants supposedly knew that the deceased was a citizen of Maine. However, the Maine courts have squarely rejected this view. "Although Maine has an interest in providing its citizens with a means of redress against nonresidents, <u>an interest beyond mere citizenry is necessary</u>, such as the protection of its industries, the safety of its workers, or the location of witnesses and creditors within its border." <u>Murphy v. Keenan</u>, 667 A. 2d 591, 594 (Me 1995) (emphasis added, citations omitted). In the <u>Murphy</u> case, a not entirely dissimilar factual basis, a Maine resident had bought a boat from a New Hampshire boat dealership, and the New Hampshire dealership was aware that the purchaser was a citizen of Maine, but Maine's Supreme Judicial Court found that the transaction with a Maine citizen was not enough by itself to support personal jurisdiction over the New Hampshire boat dealership in Maine. <u>Id.</u> Similarly, in the present case, the Plaintiff alleges only the one contract between the parties. Indeed, the FAC alleges no activities in Maine by any of the Defendants with respect to the alleged contract. All the facts alleged concern activity taking place in Connecticut -- such as the restoration and display of the subject automobile in Connecticut; although the Plaintiff's complaint does not specifically state when or where other alleged actions took place. <u>See</u> FAC ¶¶ 20, 60. The United States Supreme Court has also clarified the extent to which a single contract can constitute a contact for due process analysis; in <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985), the Supreme Court stated:

> If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.... [W]e have emphasized the need for a

> "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the Defendant purposefully established minimum contacts with the forum.

Id., 471 U.S. at 478-79, 105 S.Ct. at 2185 (emphasis in original, citations omitted). Indeed, even in a case where there were interstate telephone and mail contacts between out-of-state parties and Maine citizens related to a contract, Maine's Law Court denied specific jurisdiction; in Architectural Woodcraft Co. v. Read, 464 A.2d 210 (Me.1983), a Maine company shipped a spiral staircase to a California purchaser pursuant to telephone and mail contacts between California and Maine, then sought to collect on the sale price in a Maine court. The Law Court stated:

> The only contacts between the Defendant and the State of Maine arose from the purchase of the staircase. There is no allegation by complaint or affidavit that the Defendant ever set foot in Maine or conducted any other business here. The only "affiliating circumstances" of record in this case are that the Defendant ordered the staircase from the Plaintiff, a firm which was located in Maine, and he communicated with the Plaintiff by telephone and mail with respect to that order. Several recent cases which have involved comparable situations have uniformly concluded that the existence of a single contract with a resident Plaintiff coupled with the use of interstate communications does not establish a basis for asserting jurisdiction over a nonresident Defendant. We agree with this proposition.

Id. 464 A.2d at 212-13 (internal citations omitted), *citing* World-wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490, 1980 U.S. 65 (1979). In the present case, the Plaintiff does not allege any facts taking place in Maine at all by any of the Defendants. If this Court were to reject the view of Maine's Law Court and of the U.S. Supreme Court, and adopt the Plaintiff's view, then any transaction by a Maine citizen with an out-of-state business would subject that business to the jurisdiction of the Maine courts, so long as the out-of-state business was aware that they were doing business with a Maine citizen. This Court should decline to adopt the Plaintiff's reasoning.

The Plaintiff also creatively argues, with respect to the alleged contract, that since the Connecticut corporate Defendant is not required to collect Connecticut sales tax on an automobile sale

to an out-of-state resident, that this somehow confers jurisdiction upon the courts of Maine. Instructively, the Plaintiff does not provide any caselaw or other authority for this proposition but intimates that somehow the failure to collect sales tax is improper, and a benefit to the Defendants, again without any affidavit or authority to support this scandalous contention. To be clear, the word "tax" does not appear anywhere in the FAC, which has no allegations concerning sales taxes to which the Defendants could properly respond, as this assertion by the Plaintiff is raised for the first time in his subject objection.

Finally, the Plaintiff asserts the operation of an internet website by Defendant Dragone Classic Motorcars, Inc. -- at the present time -- as a basis for personal jurisdiction that over the Defendants. These allegations concerning a website operated by the Defendants are made for the first time in the Plaintiff's objection and appear nowhere in the FAC. In his objection, the Plaintiff does not explain how it is that the Defendant corporation's operation of a website now -- in 2020 -- relates to the Plaintiff's claim, nor explains how the internet played a role with respect to an alleged contract formed between the parties back in June 2001. See FAC ¶¶ 12, 13. Yet, since the Plaintiff's argument raises the question of so-called "virtual contacts" as a basis for personal jurisdiction, Defendants address it here.

In Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1 (1st Cir. 2018), the First Circuit discussed "virtual contacts," stating "[o]ne baseline principle has emerged: a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible. *See* [A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016)] (holding that 'the mere availability of a passive website' cannot by itself subject a Defendant to personal jurisdiction in the forum); Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010) (noting that the running of a 'website that is visible in a forum and that gives information about a company and its products' cannot alone support the exercise of jurisdiction) (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005) ); *accord* be2 LLC v. Ivanov, 642 F.3d 555, 558-59 (7th Cir. 2011) ; Toys "R" Us, Inc. v. Step

5

Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003); ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713–14 (4th Cir. 2002)." Plixer, 905 F.3d at 8. In the present case, the FAC makes no mention of any "virtual contacts" and any such contacts are merely contained within the Plaintiff's arguments in his objection. "The Plaintiff's burden is to proffer evidence 'sufficient to support findings of all facts essential to personal jurisdiction' without relying on unsupported allegations." A Corp. 812 F.3d at 58. In the present case, the Plaintiff has simply failed to meet its burden to proffer evidence to support a finding of personal jurisdiction with respect to the alleged internet activities of the Defendants. To be clear, the Plaintiff's FAC is completely silent as to activities of the Defendants within or directed to Maine, and nowhere in the Plaintiff's FAC is there any mention of the internet, email, websites, or any online activity whatsoever by any party, or their attorneys -- or any specific allegations of fact to which the individual Defendants could respond in this regard.

     For good measure, the Plaintiff also throws in the argument in his objection -- and not anywhere in the pleadings -- that because a purported prior attorney of the current Plaintiff signed up for an email newsletter from the Defendant company at some unknown time, and received a response in 2020, that the company's email to this attorney is a contact for purposes of minimum contacts. (Pl's Obj. DOC #24, pp. 4, 6) For the reasons explained herein on virtual contacts, the Defendants submit that an email newsletter -- supposedly requested by a former attorney of the Plaintiff -- is insufficient to create personal jurisdiction over a wholly unrelated transaction that is far removed from the alleged contact in time -- by a period of some 19 years after the alleged contract at issue was formed. Once again, this argument of the Plaintiff has no basis in the factual allegations of the FAC pleading so as to afford the Defendants an opportunity to properly respond to the allegation.

     Finally, the Plaintiff relies upon Exhibit C to his objection to the motion to dismiss as a basis for personal jurisdiction, which exhibit is an email from Defendants' counsel _in this case_ to Plaintiff's counsel, and Plaintiff argues that defense counsel's reference to other transactions between the parties in

the early 2000s is a factual basis for establishing minimum contacts with Maine. Defendants contend that this email is not a proper exhibit; yet, to the extent that the Plaintiff is relying upon facts as alleged by defense counsel, those facts make clear that the Plaintiff does not have a claim upon which relief can be granted. Of course, no allegations regarding other transactions between the deceased and the Defendants are contained within the FAC so as to allow the Defendants to properly respond.

With respect to the third and final prong -- the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice -- the Plaintiff does not squarely address this factor in his objection. Under the Maine cases, when a Plaintiff satisfies the first two conditions, "the burden then shifts to the Defendant to prove the negative of the third condition." Commerce Bank and Trust Co. v. Dworman, 861 A.2d 662, 666 (Me.2004)). The Defendants contend that the Plaintiff has not satisfied the first two prongs and has failed to address the third prong entirely. The factors here are "the nature and purpose of a Defendant's contacts with the forum state, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum state in the controversy, and the convenience and fairness to both parties." Id. at 667 (quoting Labbe v. Nissen Corp., 404 A.2d 564, 570 (Me.1979)). The issue of the insufficiency of the Defendants' contacts with Maine is addressed above herein. With respect to the convenience and fairness to the parties, the Plaintiff has not alleged any facts to support convenience or fairness of proceedings in Maine. Indeed, based on the alleged facts, these considerations favor jurisdiction in Connecticut. According to the FAC, the subject automobile is apparently still in Connecticut, as would be any records of the Defendants related to the automobile, as well as likely any witnesses to the transaction. See FAC ¶¶ 20, 36, 60. These facts are the reverse of factual situation in Maine Helicopters, 563 F. Supp. 2d at 296, where the court found it more convenient litigate in Maine where a helicopter bought in Florida had been brought into and remained in Maine, along with all the related records. In the present case, this

convenience factor strongly favors Connecticut. Again, the Plaintiff has failed to allege any contacts with Maine or put forth any reasons why Maine would be a more fair location than Connecticut.

**Failure to State a Claim**

The Plaintiff concedes that the claims against the individual, non-corporate Defendants in this case are insufficient and should be stricken. (Pl's Obj. p. 11). However, the Plaintiff otherwise does not address the Defendants' arguments that the FAC does not allege sufficient facts or documents that would remove the Plaintiff's claims from the realm of total conjecture. The Plaintiff does not provide any affidavits or exhibits that support his claims that the deceased believed the subject automobile to be an asset of his estate. The Plaintiff does not allege any basis for his contentions, such as writings, a Will, an asset list, an insurance policy, or any other evidence that the deceased believed the subject automobile belonged to him. The Plaintiff does not address the fact that the FAC cannot state even ballpark time periods when things supposedly took place. Defendants contend that this is because the Plaintiff clearly has no first-hand knowledge of the alleged contract and his claims are based entirely upon conjecture.

The Plaintiff relies almost entirely on the alleged 2001 contract itself, Exhibit A to the Plaintiff's objection. Yet, that document clearly states on its face that deposits are not refundable, and that the deposit was to be paid in two installments of $1 million and then an "additional deposit" of $500,000 on "June 15, 2001". See Doc #24, page id 85. In the FAC, the Plaintiff alleges these payments took place in in 2001. See FAC ¶¶ 14, 15. Hence, based upon the Plaintiff's own submissions, the bulk of the deceased's payments on the alleged contract were in the nature of a non-refundable deposit. The additional $250,000 payment alleged in paragraph 16, even if taken as true, is also undoubtedly, mathematically <u>less</u> <u>than</u> the alleged balance the deceased owed on the contract. See FAC ¶¶ 15, 16. Hence, the Plaintiff has also failed to allege a factual basis for a breach of contract by the Defendants, which breach the Plaintiff relies upon as a basis for Plaintiff's conversion count. The Plaintiff has also

8

failed to allege dates and times that would enable the court to assess the timeliness of the Plaintiff's claims. Finally, as stated above herein, the Plaintiff has not alleged any facts to satisfy the heightened pleading requirements concerning fraud, including any time periods or dates when fraudulent actions supposedly occurred. In all these respects, the Plaintiff's FAC fails to state claims upon which relief can be granted.

## Conclusion

For all the reasons stated herein, and as stated in the Defendants' Motion to Dismiss, the Plaintiff's objection should be overruled, and the Plaintiff's claims should be dismissed 1) for lack of personal jurisdiction pursuant to Rule 12(b)(2); 2) for improper venue pursuant to Rule 12(b)(3); and/or 3) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

WHEREFORE, the Defendants respectfully move that this Court dismiss Plaintiff's First Amended Complaint.

Dated at Portland, Maine December 22, 2020.

THE DEFENDANTS,
DRAGONE CLASSIC MOTORCARS, INC.,
EMANUEL DRAGONE, and
GEORGE DRAGONE


By:   */s/Edward T. Murnane, Jr.*
Edward T. Murnane, Jr. #ct21033
Mastronardi & Murnane, PLLC
2220 Park Avenue
Bridgeport, CT 06604
Phone: (203) 787-8007
Fax: (203) 713-3233
Email: ed@cilegal.com
Pro Hac Vice

*Frederick C. Moore*
Frederick C. Moore, Esq.
Maine Bar No. 2369
Robinson, Kriger & McCallum
12 Portland Pier
Portland, ME  04101

207.772.6565
fmoore@rkmlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020 I have this date caused a true and correct copy of the within Reply to Plaintiff's Objection to Defendants' Motion to Dismiss to be served electronically upon the following:

>Peter W. Evans, Esq.
>7 Estate Drive
>Gorham, ME 04038
>Email: inquiry@pevansatlaw.com

>*/s/Frederick C. Moore*
>Frederick C. Moore, Esq.
>Maine Bar No. 2369