UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LESTER WILLIAMS, Personal Representative of the Estate of Coburn Benson, <br><br> Plaintiff, <br><br> v. <br><br> DRAGONE CLASSIC MOTOR CARS, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Docket no. 2:20-cv-00115-GZS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON PENDING MOTION**

Before the Court is Defendants' Motion to Dismiss (ECF No. 21), which seeks dismissal of Plaintiff's First Amended Complaint (ECF No. 18) on various grounds including lack of personal jurisdiction, improper venue, and failure to state a claim. Having reviewed the Motion as well as the related memoranda and exhibits filed by the parties (ECF Nos. 24 & 25), the Court concludes that it lacks personal jurisdiction over Defendants and, therefore, GRANTS the Motion (ECF No. 18) on that basis and dismisses the First Amended Complaint without prejudice.

**I.     STANDARD OF REVIEW**

"When a court's jurisdiction is contested," pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of proving that jurisdiction lies in the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995). "When assessing whether personal jurisdiction exists with respect to a non-resident defendant, a federal court exercising diversity jurisdiction," as here, "acts as the functional equivalent of a state court sitting in the forum state." Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020) (internal quotation

marks omitted). Generally, the plaintiff "must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." Knox v. MetalForming, Inc., 914 F.3d 685, 690 (1st Cir. 2019) (quoting C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)). Because Maine's long-arm statute is coextensive with the Due Process Clause of the Fourteenth Amendment, personal jurisdiction in Maine focuses on the due process inquiry. See Duncan v. O'Shea, 376 F. Supp. 3d 115, 121 (D. Me. 2019); 14 M.R.S.A. § 704-A(1). "[T]he Due Process Clause requires that the defendant must have sufficient minimum contacts with the state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 148 (1st Cir. 2021) (internal quotation marks omitted). "Such contacts must be sufficient to sustain a theory of either general or specific jurisdiction." Id.

"To justify the exercise of general jurisdiction, (1) the defendant must have sufficient contacts with the forum state, (2) those contacts must be purposeful, and (3) the exercise of jurisdiction must be reasonable under the circumstances." Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010). By contrast, specific jurisdiction can be exercised when "(1) [the] claim[s] directly arise[ ] out of or relate[ ] to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018).

A district court may choose from among several methods for determining whether a plaintiff has met its burden of establishing personal jurisdiction: the prima facie approach, the preponderance-of-the-evidence approach, and the likelihood approach. See Kuan Chen, 956 F.3d

at 51.  When a court decides a "motion to dismiss for want of personal jurisdiction at the inception of the case and without holding an evidentiary hearing . . . the requirements of the prima facie approach control."  Id. at 52.  Under this approach, "the district court acts not as a factfinder, but as a data collector," asking only whether the plaintiff has proffered facts that, if credited, would support all findings "essential to personal jurisdiction."  Id. at 51 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)) (internal citations omitted).  The court draws the relevant facts "from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."  Id. at 52 (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)).  "[T]he plaintiff['s] burden is to proffer evidence sufficient to support findings of all facts essential to personal jurisdiction without relying on unsupported allegations."  Knox, 914 F.3d at 690 (internal quotation marks omitted); see also Kuan Chen, 956 F.3d at 54 ("[T]he plaintiff cannot rely solely on conclusory averments but must adduce evidence of specific facts." (internal quotation marks omitted)).  The court "construe[s] these [supported] facts in the light most congenial to the plaintiff's jurisdictional claim."  Knox, 914 F.3d at 690 (internal quotation marks omitted).  The court may also take into account undisputed facts put forth by the defendant.  Kuan Chen, 956 F.3d at 52.

## II.    FACTUAL BACKGROUND[1]

Defendant Dragone Classic Motor Cars ("DCMC") is a corporation incorporated and headquartered in Connecticut.[2]  (Am. Compl. (ECF No. 18), PageID # 49.)  Defendants Emanuel and George Dragone are officers and owners of DCMC, who both reside in Connecticut.  (Id.)  DCMC currently maintains a website listing their business as located in Orange, Connecticut.[3]  (See Pl. Ex. B (ECF No. 24), PageID #s 87 & 90.)  The website allows visitors to fill out an online form to prompt a response from DCMC.  (See id., PageID # 87.)  The site also describes various services offered by DCMC involving the restoration of classic cars and the consignment of cars.  (See id., PageID #s 105–11.)  It includes pictures of classic cars on display and offered for sale.  (See id.)  The website lists Emanuel (or "Manny") Dragone as the President of DCMC and includes a picture and email address.  (See id., PageID # 92.)  Likewise, it lists George Dragone as Vice President and includes his picture and email address.  (See id., PageID # 93.)  An "About Us"

---

[1] The factual recitation that follows does not reflect two proffered email exhibits attached to Plaintiff's Response (ECF No. 24).  Plaintiff's Exhibit D appears to be an email from a DCMC mailing list received by Attorney Anthony Sineni on December 4, 2020.  See ECF No. 24, PageID # 116–19.  Plaintiff's Exhibit C appears to be an email from defense counsel received by Attorney Peter Evans on November 12, 2020.  See ECF No. 24, PageID #s 114–15.  In their Reply, Defendants object to this particular exhibit.  See Defs. Reply, PageID # 125–26.  Both proffered email exhibits are unauthenticated, contain hearsay, and lack other redeeming indicia of reliability.  See, e.g., Schaefer v. Cybergraphic Sys., Inc., 886 F. Supp. 921, 923–24 (D. Mass. 1994) ("While the prima facie test is a lenient standard, a plaintiff cannot simply rely on unsupported allegations in her pleadings to establish personal jurisdiction over a defendant. Rather, she must set forth, through affidavits and other competent evidence, specific facts on each jurisdictional element."); see also Neelon v. Blair Krueger & Desert Eagle Res., Ltd., No. 1:12-cv-11198-FDS, 2013 U.S. Dist. LEXIS 75202, at *31 (D. Mass. May 29, 2013) (noting circuit split on permitting use of hearsay statements for purpose of establishing personal jurisdiction).  Additionally, Exhibit C reflects statements made by counsel during apparent informal compromise negotiations.  See F.R.E. 408(a)(2).  Thus, on the record presented, the Court declines to consider either email as an appropriate proffer.  However, the Court notes that it has reviewed both email exhibits and determined that the substance of these emails ultimately would not change the Court's personal jurisdiction analysis.

[2] The Court notes that Defendants identify DCMC as "Dragone Classic Motorcars, Inc.," in their filings.

[3] Plaintiff's proffered Exhibit B comprises 26 pages and appears to reflect various pages from the website dragoneclassic.com as it existed on November 30, 2020.  See ECF No. 24, PageID #s 87–113.  Defendants have not objected to the Court's consideration of this exhibit beyond noting that it does not necessarily reflect the internet presence of DCMC during the time period relevant to Plaintiff's claims.  See Defs. Reply, PageID # 124.  Therefore, the Court accepts this particular exhibit de bene esse for purposes of analyzing personal jurisdiction under the prima facie standard.

section of the website describes DCMC's "mission" as including "meeting and building relationships with collectors, car enthusiast[]s and specialists all over the world" and shows another member of the management team, Alex Dragone, pictured at a car show standing in front of what is described as his 1909 Locomobile. (Id., PageID #s 97–98.)

The Estate of Coburn Benson ("Benson Estate") is an active probate estate currently pending in the York County Probate Court.[4] (Am. Compl., PageID # 49.) Plaintiff Lester Williams, a Maine resident, is the personal representative of the Benson Estate. (Id., PageID #s 48–49.) On June 1, 2001, Benson, then still alive, purchased a 1906 Locomobile race car and negotiated a contract with DCMC to "[c]omplete [r]estoration to buyer's [s]pecification." (Id., PageID #s 49–50; Pl. Ex. A (ECF No. 24), PageID #s 85–86.) Emanuel Dragone negotiated this contract with Benson.[5] The contract listed Benson's address as a post office box in Limerick, Maine. (Pl. Ex. A, PageID # 85.) Per the terms of the contract, the total "cash price" for the restored 1906 Locomobile was $2 million "at the seller's place of business." (Id.) In the section of the form contract reserved for calculating sales tax, there is a handwritten notation of "none" and "out of state." (Id.) Benson made an initial down payment of $1 million via personal check dated June 1, 2001. (Pl. Ex. B (ECF No. 18-2), PageID # 57.) Two weeks later, on June 13, 2001,

---

[4] Plaintiff's original Complaint stated that Benson died in July 2019. See Compl. (ECF No. 1), PageID # 1. This allegation did not survive into Plaintiff's operative filings. Nonetheless, there is no dispute that Mr. Benson died on or about July 14, 2019, as reflected on the docket in Estate of Coburn B. Benson, York County Probate Court, No. 2019-0765. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.").

[5] A copy of the completed form contract, labeled Plaintiff's Exhibit A, is attached as a one-page document to Plaintiff's First Amended Complaint (ECF No. 18-1) and also attached to Plaintiff's Response as a two-page document. See ECF No. 24, PageID #s 85–86. Throughout this Order, the Court cites the two-page version. However, the Court acknowledges that as part of the fraud claim, Plaintiff alleges that "a second page to the original contract . . . was never seen by Benson or Benson's Estate." Am. Compl., PageID # 53. Despite this assertion, Plaintiff has not endeavored to explain how Benson signed the 2001 contract, which explicitly includes an acknowledgment that Benson "read the terms and condition on the back hereof and agree[d] to them." ECF No. 24, PageID # 85. Given this language, the Court classifies Plaintiff's allegations regarding the second page as a conclusory allegation that is not supported by the record.

Benson made an additional payment of $500,000 via personal check. (Pl. Ex. C (ECF No. 18-3), PageID # 58.) Both of these personal checks listed a street address for Benson in Concord, Massachusetts. (See Pl. Exs. B & C, PageID #s 57 & 58.) Pursuant to the terms of the contract, the remaining balance was to be paid "on completion."[6] (Pl. Ex. A, PageID # 85.)

After signing this contract, Benson would call to "make inquiries" about the Locomobile to the two Dragones roughly every three months. (Am. Compl., PageID # 51.) When he inquired, he would at times be told the restoration was ongoing, but at other times he received no return phone calls. (Id.) At some point prior to 2018, Benson rejected DCMC's work on the rods of the Locomobile and, thereafter, Benson hired another contractor to remake the rods. (Id., PageID # 52.) At another unspecified date, Benson viewed the Locomobile's transmission and rejected the transmission work. (Id.) Following this rejection, DCMC "engaged in a course of conduct which resulted in [a] lack of meaningful communication with Benson about the progress of the restoration of the Locomobile." (Id.)

In 2018, Benson and Williams, along with another individual, went to Connecticut to view the Locomobile, but they were prevented from doing so. (Id., PageID # 51.) They were told that they needed to schedule an appointment, but they ultimately did not see the vehicle despite making several further attempts. (Id., PageID #s 51–52.) At some point, DCMC put the "cosmetically finished" Locomobile in its showroom. (Id., PageID # 54.) DCMC and its representatives "have made outside affirmative statements claiming ownership of the Locomobile." (Id., PageID # 52.)

Benson and his estate have repeatedly demanded the Locomobile from DCMC. (Id., PageID # 53.) For their part, DCMC asked Benson to pay an additional $500,000 to complete the

---

[6] Despite the contract calling for the remaining $500,000 to be paid upon completion, it is alleged that, on or about June 13, 2001, DCMC requested an additional $250,000 payment, which Benson paid via wire transfer. Am. Compl., PageID # 50.

restoration of the Locomobile.  However, Benson would not agree to pay this additional amount. (Id., PageID # 50.)  At some point, DCMC also wrote Benson requesting additional funds and suggesting that if additional funds were not tendered by a particular date, Benson would "lose ownership of the Locomobile."  (Id., PageID # 53.)

As the personal representative of Benson's estate, Williams has engaged multiple attorneys in an attempt to secure the Locomobile as an asset of the estate.  To date, these efforts have culminated in the filing of this case.

### III.    DISCUSSION

Plaintiff's First Amended Complaint seeks compensatory and punitive damages via four asserted claims:  breach of contract (Count I), conversion (Count II), fraud (Count III), and anticipatory repudiation (Count IV).  Defendants have responded by moving to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); improper venue pursuant to Rule 12(b)(3); and failure to state a claim pursuant to Rule 12(b)(6).  Faced with multiple arguments for dismissal, the Court is obliged to first determine whether it can exercise personal jurisdiction over Defendants.  See, e.g., Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case.").

The "constitutional touchstone for personal jurisdiction" is "minimum contacts" between a defendant and the forum state.  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992).  "In analyzing minimum contacts," the First Circuit has "recognized two types of personal jurisdiction: general and specific."  Id. at 1088.  Here, the Court first considers whether general personal jurisdiction is established on the record presented.

### A. General Jurisdiction

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Id.  While Plaintiff asserts that "general jurisdiction exists" based on "the extent of all reliably proffered evidence and solicitation by Dragone in the State of Maine," the Court disagrees.  (Pl. Response, PageID # 80.)

#### 1. DCMC

Turning first to the named corporate Defendant, it is Plaintiff's burden to proffer evidence establishing "first, that the defendant's general business contacts with the forum state, unrelated to the suit at hand, [are] continuous and systematic; second, that those contacts represent the defendant's purposeful availment of the privilege of conducting business in the forum; and third, that the exercise of general jurisdiction over the defendant [is] reasonable." Kuan Chen, 956 F.3d at 57.  Because "[g]eneral jurisdiction, as its name implies, extends to any and all claims brought against a defendant . . . [o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction." Ford Motor Co. v. Montana Eighth Judicial Dist. Court, 592 U.S. ___, 2021 U.S. LEXIS 1610, at *11 (Mar. 25, 2021) (internal quotation marks omitted).  "[T]he lodestar of the inquiry is whether the corporation's general business contacts with the forum are sufficiently continuous and systematic 'as to render [it] essentially at home in the forum State.'" Kuan Chen, 956 F.3d at 57 (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)).  To be "at home" in a foreign state, a corporation must have affiliations with that state so substantial that it is "comparable to a domestic enterprise in that State." Daimler, 571 U.S. at 133 n.11.

On the record presented, the Court does not find this to be the exceptional case in which a non-resident corporation's general business operations in Maine are so substantial that it can fairly be described as at home in Maine.  In fact, the only DCMC contacts with Maine that might be

8

considered continuous or systematic are via its website. However, the First Circuit has held that "a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible." Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 8 (1st Cir. 2018) (collecting cases). Put differently, "the mere whiff of a virtual presence will not suffice." Kuan Chen, 956 F.3d at 57. Here, Plaintiff's evidentiary proffer does not reach the level of Kuan Chen, a case in which jurisdiction was rejected despite the defendant having maintained an informational website and actually enrolled two in-forum students in an online course. See id. Based on these precedents and the Court's review of the website materials provided by Plaintiff, the Court does not find that DCMC's website reflects either purposeful availment of the privilege of doing business in Maine or continuous and systemic contacts with Maine.[7]

### 2. Emanuel and George Dragone

Plaintiff has not enunciated separate grounds upon which they believe the Court has jurisdiction over the two individual Dragone defendants, neither of whom are domiciled in Maine. See, e.g., Ford Motor Co., 2021 U.S. LEXIS 1610, at *12 ("In what we have called the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile."). Even if the Court were to have found general jurisdiction existed over DCMC, the general rule is that "jurisdiction over a corporate officer may not be based merely on jurisdiction over the corporation . . . ." Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 10 (1st Cir. 1990) (internal quotation marks omitted). Here, the record is essentially devoid of any evidence that the two individual Defendants have any forum-based contacts with Maine beyond the contacts they had with Benson and his estate regarding the Locomobile.

---

[7] The Court notes that even if it had accepted Plaintiff's proffer of a single email solicitation received by Plaintiff's former attorney in December 2020 after he allegedly opted to receive email communications from DCMC, the Court would find DCMC's contacts with Maine insufficient. See Pl. Ex. D, PageID #s 116–19.

In short, the Court readily concludes that neither DCMC nor the individual Dragone Defendants are subject to general personal jurisdiction in Maine.

### B. Specific Jurisdiction

Turning to specific jurisdiction, the First Circuit has instructed that the exercise of specific jurisdiction over an out-of-forum defendant is appropriate only if three requirements are met:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

PREP Tours, Inc. v. American Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting United Elec., 960 F.2d at 1089). This inquiry is "highly fact-specific" and "not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." Id. (internal quotation marks omitted). Failure to meet any of the three requirements is fatal to the exercise of jurisdiction, see Kuan Chen, 956 F.3d at 59, and Plaintiff must make a discrete showing "for each claim and each defendant," Nandjou, 985 F.3d at 148. Thus, "it is possible for a defendant to have some contact with the forum state, including even some contact 'related' to a legal controversy, yet still evade the coercive power of the forum state's courts." Supplement Edge, Inc. v. One Brands, LLC, No. 2:20-cv-00348-LEW, 2021 U.S. Dist. LEXIS 38015, at *4 (D. Me. Mar. 1, 2021) (citing BNSF Ry. Co. v. Tyrell, 137 S. Ct. 1549, 1559 (2017)).

#### 1. Relatedness

Plaintiff argues that Defendants' "purported mailings to Coburn Benson regarding the contract[u]al events pertaining to the restoration, [their] purported phone calls to Coburn Benson, Benson and William's calls from Maine, other ongoing classic car transactions Dragone engaged

in with Coburn Benson, and other past transactions with Coburn Benson spanning an admitted 11-year period" satisfy the relatedness requirement.  (Pl. Response, PageID # 78.)  Plaintiff also seeks to use DCMC's representation of itself as a "national company" on its website and its "internet sale of products and services to the entire population of the citizens of the State of Maine through direct email subscription and direct solicitation" to establish relatedness.  (Id., PageID #s 76, 78–79).

While "forum-state contacts need not involve physical presence," Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999), it remains incumbent upon Plaintiff to establish "a demonstrable nexus between the complaint's claims and the activities in the forum that properly may be attributed to the defendants," PREP Tours, 913 F.3d at 18 (internal quotation marks omitted); see also Ford Motor Co., 2021 U.S. LEXIS 1610, at *13 ("The plaintiff's claims, we have often stated, must arise out of or relate to the defendant's contacts with the forum." (internal quotation marks omitted)).  At the outset, the Court notes that Plaintiff has not shown that either the unspecified "other ongoing classic car transactions" or the Defendants' internet marketing practices bear any relationship to Plaintiff's claims in this case.

Regarding Plaintiff's contract-based claims of breach and anticipatory breach, the Supreme Court has rejected the notion that a "contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985).  Rather, the Court must look to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," id. at 479, which the First Circuit has described as the "contract-plus" factors, see, e.g., United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 621 (1st Cir. 2001).  The First Circuit also frequently notes that "[a] consideration in a contract action . . . is whether the defendant's forum-based activity was

11

instrumental in the contract's formation or breach." Bluetarp Fin., Inc. v. Matrix Const. Co., Inc., 709 F.3d 72, 80 (1st Cir. 2013). Ultimately, "the due process inquiry turns on the defendant's contacts with the forum, not the location of the plaintiff's residence." Doyle v. Merz N. Am., Inc., 405 F. Supp. 3d 186, 193 (D. Mass. 2019).

Here, Plaintiff has not shown that the contract was negotiated, executed, performed, or breached in Maine. The terms of the contract do not state that Maine law governs.[8] Benson paid using checks bearing a Massachusetts address and, given that the address Benson provided on the contract was a post office box, it is not even clear what Benson's own connection to Maine was at that time. Notably, the contract also contemplated that Benson would need to make arrangements to pick up the restored car in Connecticut, as delivery was not included. As to the alleged phone calls and "purported mailings," such "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail', without more, is [in]sufficient to satisfy due process requirements." Nicholas v. Buchanan, 806 F.2d 305, 307 (1st Cir. 1986) (per curiam). Accordingly, the Court concludes that it lacks specific jurisdiction over Benson's contract-based claims.

As to Plaintiff's remaining tort claims, the First Circuit has observed that "in some cases, the defendant's contacts with the forum jurisdiction that are related to a plaintiff's tort claim might differ from those related to its contract claim," PREP Tours, 913 F.3d at 21 n.6, and has therefore encouraged the "exploration [of specific jurisdiction] on a claim-by-claim basis," Phillips Exeter, 196 F.3d at 289. "To satisfy the relatedness prong of the constitutional inquiry in a tort case, the evidence produced to support specific jurisdiction must show that the cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Platten v. HG Berm.

---

[8] The only reference to any statutory regime in this contract is to a Connecticut law concerning emissions. Pl. Ex. A, PageID # 86.

12

Exempted Ltd., 437 F.3d 118, 137 (1st Cir. 2006) (internal quotation marks omitted). "[I]t is . . . insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff." Walden v. Fiore, 571 U.S. 277, 286 (2014) (internal quotation marks omitted). Likewise, the Court "treat[s] isolated or sporadic [contacts] differently from continuous ones." Ford Motor Co., 2021 U.S. LEXIS 1610, at *22 n.4.

Plaintiff's conversion claim is based on Defendants' continued retention of both the Locomobile and the Locomobile payments in Connecticut. The record is devoid of any in-forum conduct relating to this claim that does not overlap with what was already found wanting in connection to Plaintiff's contract claims. Further, it is even less clear how Plaintiff's cause of action arises from or relates to any of the Defendants' scant forum-based contacts. See Platten, 437 F.3d at 137; see also Libersat v. Sundance Energy, Inc., 978 F.3d 315, 323 (5th Cir. 2020) ("The intentional tort alleged is conversion, and the wrongful exercise of dominion and control over another's property must occur in the forum state to establish personal jurisdiction." (internal quotation marks omitted)). Accordingly, the Court concludes it lacks jurisdiction over this claim.

As pled, Plaintiff's fraud claim is based on Defendants having "tendered two documents that on their face are intended to modify their contract"; these documents being a second page to the original contract and a sparsely described letter seeking payment. (Am. Compl., PageID # 53.) The record provides no supporting detail as to when or where these documents were tendered. As such, Plaintiff has neither established that this claim involved any in-forum conduct, nor has he shown that Defendants had related contacts with Maine that were anything more than "isolated or sporadic."[9] Ford Motor Co., 2021 U.S. LEXIS 1610, at *22 n.4; cf. id. at *29 (noting defendant's "veritable truckload of [in-forum] contacts").

---

[9] The Court notes without deciding that these same omissions would potentially be fatal to this claim even if the Court found jurisdiction. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the

## 2. Purposeful Availment

"The purposeful availment prong represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." C.W. Downer, 771 F.3d at 66 (internal quotation marks omitted). "The cornerstones of this inquiry are voluntariness and foreseeability[,]" which "places the emphasis on the defendant's intentions and prohibits jurisdiction based on random, fortuitous, or attenuated contacts." Id. (internal quotation marks omitted).

As to contract claims, the First Circuit has "found that the exercise of jurisdiction is reasonably foreseeable when the defendant deliberately direct[ed] its efforts toward the forum state, or when the defendant enter[ed] a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State." LP Sols. LLC v. Duchossois, 907 F.3d 95, 104 (1st Cir. 2018) (internal citations and quotation marks omitted). Here, the record does not reveal if Defendants ever solicited Benson's business in Maine, and, thus, Plaintiff has not established that Defendants deliberately directed their efforts toward Maine. See, e.g., Phillips Exeter, 196 F.3d at 292 ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship—say, by solicitation—the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." (internal citation omitted)). While "a lack of solicitation alone is not necessarily determinative," it is also not obvious that the contractual relationship at issue otherwise "envision[ed] or include[d] sufficient continuous and wide-ranging contacts with Maine to meet the foreseeability test." Id. By executing this contract—to restore an

---

circumstances constituting fraud or mistake."); United States ex rel. Kelly v. Novartis Pharm. Corp., 827 F.3d 5, 13 (1st Cir. 2016) ("The particularity requirement means that a complaint must specify the time, place, and content of an alleged false representation." (internal quotation marks omitted)).

automobile in Connecticut—Defendants did not take on "continuing obligations" implicating Maine. Id. at 105. In fact, the contract did not even contemplate that Defendants would deliver the restored vehicle to Maine.

Plaintiff's single seeming argument as to purposeful availment is that the contract includes that words "out of state" under sales tax, which Plaintiff asserts is an "acknowledge[ment] that Dragone is entering into a transaction with a person from the State of Maine [and] also that Dragone is availing itself to the laws of the State of Maine in order to avoid paying Connecticut sales tax." (Pl. Response, PageID # 75.) Plaintiff contends that, from this notation, "[Defendants] can foresee the possibility of an action being brought against [them] by that Maine resident, in Maine." (Id., PageID #s 75–76.) The Court disagrees. While the First Circuit has previously held that a contract's "choice of law provision and . . . forum selection clause" designating Maine made it eminently foreseeable that a defendant "would be held accountable for any breach in Maine's courts," the notation Plaintiff identifies is not such a clause.[10] Bluetarp Fin., 709 F.3d at 82. At best, Plaintiff has presented a prima face case that Defendants knew Benson was located in Maine while they were endeavoring to complete the restoration of the 1906 Locomobile in accordance with the 2001 contract. However, "the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008).

As to Plaintiff's tort claims, the Court recognizes that "[t]he threshold showing for purposeful availment is lower in the tort context for the simple reason that a tortfeasor does not often purposely avail himself of the protections of the laws of a forum state." Rodriguez v. Samsung Elecs. Co., 827 F. Supp. 2d 47, 52 (D. Mass. 2011). "Even so, a tort plaintiff must make

---

[10] As previously noted, Connecticut law is the only state law even mentioned in the contract. See Pl. Ex. A, PageID # 86.

some showing as to voluntariness and foreseeability to ensure 'that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum state.'" Id. (quoting Sawtelle, 70 F.3d at 1391). Here, the Court concludes that Plaintiff's claims for conversion and fraud arise from the same set of contacts as his contract claims, and as a result the Court ultimately concludes that a purposeful availment analysis that focuses only on Plaintiff's tort claims yields the same result: Plaintiff has not established voluntariness or foreseeability. See Vu v. RSI Racing Solutions, No. 1:19-cv-00680-LM, 2019 U.S. Dist. LEXIS 178757, at *9 (D.N.H. Oct. 16, 2019) ("Where, as here, the contract and tort claims arise from the same activity or occurrence and the court considers the same set of contacts as to both claims, the court may conduct a single purposeful availment analysis for both sets of claims.") (citing PREP Tours, 913 F.3d at 21 n.6); see also Lucerne Farms v. Baling Techs., Inc., 226 F. Supp. 2d 255, 258–59 (D. Me. 2002) (analyzing both tort and contract claims under contract framework when both sets of claims were based on representations in the parties' contract).

### 3. Reasonableness

Because Plaintiff has established neither of the first two factors—both of which were necessary—the Court need not proceed to fully review the five "gestalt" reasonableness factors.[11]

Having determined that this Court lacks personal jurisdiction over all three Defendants, the Court concludes that Defendant's alternative arguments regarding venue and failure to state a claim are hereby MOOT.

---

[11] These five factors are the defendant's burden of appearing, the forum state's interest in resolving the dispute, the plaintiff's interest in convenient and effective relief, the judicial system's interest in the most effective resolution of the dispute, and "the common interests of all sovereigns in promoting substantive social policies." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016).
    The Court notes that one interest Plaintiff identifies (Maine's "public policy interest protecting its citizens from fraudulent businesses or scammers, especially its elderly citizens") may have been persuasive had the Court reach this prong. Pl. Response, PageID # 80. However, on the record presented, the Court cannot determine that this interest is actually implicated by Plaintiff's pleadings, nor how this interest might impact the reasonableness analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF No. 21), on grounds of lack of personal jurisdiction, and DISMISSES Plaintiff's First Amended Complaint without prejudice.

SO ORDERED.

                                                      /s/ George Z. Singal
                                                      United States District Judge

Dated this 30th day of March, 2021.